**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Salas Avocado SPR de RL,<br><br>Plaintiff,<br><br>v.<br><br>SA&E Enterprises LLC,<br><br>Defendant. | No. CV-20-00046-TUC-DTF<br><br>**MEMORANDUM OPINION AND ORDER** |

Pending before the Court is Plaintiff's Motion for Summary Judgment (Doc. 39) and the Parties' responsive pleadings and statements of facts (Docs. 40–43).

## FACTUAL BACKGROUND

On January 27, 2020, Plaintiff Salas Avocado S.P.S. de R.L. ("Salas" or "Plaintiff") filed a complaint under the Perishable Agricultural Commodities Act of 1930, 7 U.S.C. § 499b ("PACA"), against Defendant SA&E Enterprises LLC ("SA&E" or "Defendant"). (Doc. 1.) On June 18, 2020, SA&E filed its Answer, which included a counterclaim for violation of the implied covenant of good faith and fair dealing. (Doc. 15.)

In its complaint, Salas alleges that in December of 2018, "in the course of foreign commerce, Salas, by contract, sold to SA&E 3,840 cases of avocados." (Doc. 1 at ¶ 7.) SA&E would be responsible for selling the cases of avocados to third-party customers and pay Salas, minus expenses and commission. (*Id.*) SA&E received and accepted all 3,840 cases of avocados and they sold 2,083 cases to third-party customers for $45,624.00,

donated 694 cases[1], and has failed to account for 1,063 cases that it received. (*Id.* at ¶¶ 10–12.) SA&E has failed to pay Salas any sum from the sale of the avocados. (*Id.* at ¶ 14.)

Plaintiff brings two claims against SA&E. Count One alleges that Salas remains an unpaid supplier of produce in violation of PACA. (*Id.* at ¶¶ 16–18.) Count Two alleges that Salas and SA&E entered into a contract for the purchase and sale of 3,840 cases of avocados and that SA&E has "failed to pay for the commodity accepted and thereby breached its contract with Salas resulting in damages to Salas [. . .]." (*Id.* at ¶¶ 19–23.)

## SUMMARY JUDGMENT STANDARD

In deciding a motion for summary judgment, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the party opposing the motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1289 (9th Cir. 1987). Summary judgment is appropriate if the pleadings and supporting documents "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

## DISCUSSION

Plaintiff seeks summary judgment on his PACA and breach of contract claims, as well as on Defendant's counterclaim.

**Count One – Perishable Agricultural Commodities Act of 1930, 7 U.S.C. § 499b**

Plaintiff alleges that it is "engaged in the business of growing and selling wholesale quantities of perishable agricultural commodities, including avocados [. . .]." (Doc. 40 at 1.) Defendant, a licensed dealer, commission merchant, and/or broker under PACA, entered into a seller/dealer contract to sell avocados on Plaintiff's behalf to third-party

---

[1] Salas states that it is not making any claim for the 694 cases that were donated. (Doc. 39 at 4 n.2.)

- 2 -

buyers in exchange for reimbursement of certain expenses and payment of a commission. (*Id.* at 1–2.)  Salas made two shipments of avocados on December 13th and 18th, 2018, totaling 3,840 cases and weighing 43,392 kilograms.[2] (*Id.* at 2.) The Parties agreed upon the price of $26 per case or $2.30 per kilogram, making the shipments worth approximately $99,801.60. (*Id.*)

On December 21st and 26th, 2018, the U.S. Department of Agriculture ("USDA") inspected the shipments, confirmed receipt of 3,840 cases, and Plaintiff asserts that they found the "avocados were delivered, in good condition, with de minimis spoilage." (*Id.*). The USDA inspection certificates indicate that Defendant was the responsible party for the handling of the avocados at the time of the inspection. (Docs. 40 at 2; 40-1 at 11–12.)

Plaintiff asserts that Defendant sold 2,083 cases, donated 694 cases,[3] and have left approximately 1,063 cases unaccounted for or unreported. (Doc. 40 at 3.)  It is undisputed that Defendant sold at least 2,083 cases for a total of $45,624.00 and incurred $19,517.82 in broker fees and expenses. (*Id.* at 2.)  Plaintiff has already transferred $8,166.00 of the brokerage fees and expenses to Defendant, making the total owed to Plaintiff $34,146.38. (*Id.*)  Plaintiff further asserts that based upon the Parties' agreed upon value, it is owed $30,226.37 for the unaccounted-for 1,063 cases of avocados. (*Id.* at 3.)  Thus, Plaintiff contends that Defendant has failed to pay for both the sold and unaccounted-for avocados in an amount totaling $64,372.75. (*Id.*)

Defendant asserts that it did not beach its obligations, that the damages are less than $50,000, and asserted a counterclaim alleging that Plaintiff breach its implied covenant of good faith and fair dealing. (Docs. 15; 40-2 at 2–3). Specifically, Defendant contends that

---

[2] The Court notes that in its motion for summary judgment, statement of facts, and in the Declaration of Pedro Salas in which the former two documents rely upon, Plaintiff states that the shipments took place in December of 2019. (Docs. 39; 40; 40-1 at 1–4.)  However, the complaint and all evidence submitted in support of the motion for summary judgment indicates that the shipments took place in December of 2018, and not 2019. (Docs. 1; 40-1 at 5–64.)  The Court assumes the reference to 2019 is a typographical error.

[3] In its motion for summary judgment and statement of facts, Plaintiff incorrectly states that 594 cases were donated, where the invoices actually reflect that 694 cases were donated. (Doc. 1 at ¶ 11; Doc. 1-2 at 14–19; Doc. 39 at 3; Doc.40 at 2; Doc. 40-1 at 59–64.)  The Court has determined this to be a typographical error because the Complaint indicates that 694 cases were donated and the number of cases total correctly. (*Id.*)

the first shipment was untimely and arrived in "poor near spoiled" condition and had to be sold at a value lower than that set by the Parties. (Doc. 41 at 2.)  Defendant concedes that the second shipment was timely, that all cases have been sold, and Defendant has failed to issue payment for any portion of the sales from either shipment. (*Id.* at 1–2, 4.)

PACA was enacted to regulate, promote fairness, and prevent unfair business practices in the perishable agricultural commodities industry. *Middle Mountain Land & Produce Inc. v. Sound Commodities Inc.*, 307 F.3d 1220, 1223 (9th Cir. 2002); *Farley & Calfee, Inc. v. U.S. Dep't of Agric.*, 941 F.2d 964, 966 (9th Cir. 1991) (citing *Tri-Cty. Wholesale Produce Co. v. U.S. Dep't of Agric.*, 822 F.2d 162, 163 (D.C. Cir. 1987)). "PACA provides that, in connection with any transaction in interstate or foreign commerce involving any perishable agricultural commodity, it shall be unlawful for a commission merchant, dealer, or broker, 'to fail or refuse truly and correctly to account and make full payment promptly in respect of any transaction in any such commodity to the person with whom such transaction is had.'" *C.H. Robinson Co. v. Glob. Fresh, Inc.*, No. CV 08-2002-PHX-SRB, 2010 WL 11515522, at *2–3 (D. Ariz. Jan. 22, 2010) (quoting 7 U.S.C. § 499b(4)).

Additionally, PACA requires that all merchants, dealers, and brokers in perishable agricultural commodities be licensed by the Secretary of Agriculture. *Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280, 282 (9th Cir. 1997).  Finally, PACA also requires "commission merchants, dealers, and brokers to hold all perishable agricultural commodities received by the merchant, dealer, or broker, as well as all 'inventories of food or other products derived from' such commodities 'and any receivables or proceeds from the sale of such commodities or products ... in trust for the benefit of all unpaid suppliers or sellers' of such commodities, until full payment to the suppliers or sellers." *Chucho Produce LLC v. Tonys Fresh Produce Inc.*, No. CV-21-00372-TUC-RM, 2021 WL 4282580, at *2 (D. Ariz. Sept. 21, 2021) (quoting 7 U.S.C. § 499e(c)(2)).  Following any of the above-mentioned failures, a seller may enforce its rights either:

(1) by complaint to the Secretary ... or (2) by suit in any court of competent

>jurisdiction; but this section shall not in any way abridge or alter the remedies now existing at common law or by statute, and the provisions of this chapter are in addition to such remedies.

*Id.* (quoting 7 U.S.C. § 499e(b)).

To prevail on a PACA claim, a plaintiff must show that the following four elements are met: "(1) a transaction[. . .]; (2) purchase and receipt of the perishable agricultural commodities by a commission merchant, dealer, or broker engaged in the handling of produce in interstate and/or foreign commerce; (3) a failure to pay fully and promptly or a failure to maintain the trust required by § 499e(c); and (4) preservation of trust rights by the seller by notification of intent to preserve the benefits of the trust on invoices or billing statements." *C.H. Robinson Company*, 2010 WL 11515522, at *3 (citing *Fam. Tree Farms, LLC v. Alfa Quality Produce, Inc.*, No. 108-CV-00481-AWI-SMS, 2009 WL 565568, at *5 (E.D. Cal. Mar. 5, 2009), *report and recommendation adopted,* No. 1:08-CV-00481AWISMS, 2009 WL 1066255 (E.D. Cal. Apr. 20, 2009); *Sunkist Growers, Inc.*, 104 F.3d at 284; and 7 U.S.C. §§ 499b, 499e(c)).

Here, the Parties do not dispute that a transaction occurred that involved the handling of produce in foreign/domestic commerce; that Defendant was a licensed dealer, commission merchant, and/or broker under PACA; that Defendant failed to pay Plaintiff fully or promptly and failed to maintain a trust; and that Plaintiff provided notice of its intent to pursue its rights under PACA. (Doc. 41 at 4–5.)  Therefore, the Court finds that these elements have been met and pretermits further discussion.

However, Defendant avers that there are issues of material fact regarding Plaintiff's PACA rights. (*Id.* at 5.)  Specifically, Defendant contends that the Parties contracted for Plaintiff to make two timely shipments from Mexico to Defendant in Nogales, Arizona. (*Id.*)  Defendant concedes that the second shipment was made timely; however, argues that the first shipment "arrived several days after December 13, 2018," and "[a]s a result of the late arrival [the] avocados were in poor near spoiled condition." (*Id.*)  Defendant further claims that there are no unaccounted-for cases of avocados. (*Id.* at 2.)

- 5 -

1   The Court notes that Defendant does not contest liability as to either shipment. Defendant concedes that both shipments were received and sold to third parties under the contract. Further, Defendant concedes that payment is due in full to Plaintiff for the second shipment. Specifically, Defendant admits that it has failed to pay Plaintiff for the uncontested portion of the proceeds from the sales of the second shipment and that it has also failed to maintain a trust for the uncontested amount. (Doc. 41 at 2.) Thus, to the extent Defendant does not contest liability or damages related to the second shipment, summary judgment is due to be granted as to the second shipment.

The sole issue that remains is the amount of money due Plaintiff by Defendant under their agreement. The argument asserted by Defendant to establish a genuine issue of material fact is Defendant's claim that the first shipment arrived late and that the avocados were in "poor near spoiled condition." Hence, these avocados were sold at less than the agreed upon rate under the contract. The Defendant relies entirely on a written statement by Dale Paul Jones ("Jones Statement")[4] containing the conclusory assertion that the "USDA market price at time of first shipment arrival at US/Mexico border was about $16 per case for avocados of poor near spoiled condition. USDA market price at time of arrival at US/Mexico border was not $26 per case." (Doc. 42-1 at 1.) Defendant further asserts that there are no cases unaccounted for. (*Id.*) Attached to the Jones Statement is what appears to the court to be a screenshot of text messages, which the court is left to speculate was between the Parties requesting pictures of the avocados and to schedule a call for the next day. (Docs. 42-1 and 42-2.)

Plaintiff argues that Defendant's threadbare and conclusory written statement is insufficient to establish a genuine issue of material fact and defeat summary judgment. (Doc. 43 at 4) (citing *De Luna v. Sunrise Hosp. & Med. Ctr., LLC*, 809 F. App'x 358, 360 (9th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)) (A "threadbare declaration" that "is contradicted by the documentary evidence in the record .

---

[4] As previously stated, in its Reply brief, Plaintiff lodges several attacks aimed at the admissibility of the Jones Statement. However, the Court need not grapple with these issues because even if the Court were to reject Plaintiff's arguments and refuse to disregard the Jones Statement, Defendant has still failed to meet its burden to establish a genuine issue as to any material fact as discussed herein.

. . is at most a mere 'scintilla' of evidence, which is not enough to defeat summary judgment."); *Am. Fed'n of State v. Nevada ex rel. Dep't of Corr.*, 460 F. App'x 688, 690 (9th Cir. 2011), *as amended on reh'g in part* (Dec. 22, 2011) (A declaration that is "conclusory, self-serving, and lacking any supporting evidence . . . fail[s] to establish a genuine issue of material fact on summary judgment review.")). Plaintiff further argues that Defendant has failed to provide any evidence to support its contention that the avocado shipments were untimely or that they were in "poor near spoiled condition," particularly evidence that would refute the USDA's inspection certificates that the avocados were in "good condition" when Defendant had possession of the shipments. (Doc. 43 at 4.)

The Court agrees. The undisputed evidence in the record establishes that Plaintiff shipped the avocados to Nogales, Arizona, from its Mexico facility on two dates: December 13, 2018, and December 18, 2018. On December 21, 2018, and December 26, 2018, respectively, the USDA received and inspected the shipments. To start, both shipments took nine days to arrive at their destination. Defendant provides no explanation why it deems one shipment late and the other timely. Further, Defendant admits that it sold all the cases of avocados received, less the cases donated or used for marketing purposes. (Doc. 42-1 at 1.)

Next, the USDA confirmed receipt of 1,920 cases in the first shipment and found only five (5) cases contained avocados with scars, scabs or not well trimmed, and zero (0) cases containing decayed avocados. (Doc. 40-1 at 11–12, 29–30.) Similarly, the USDA confirmed receipt of 1,920 cases in the second shipment and found only fifteen (15) cases contained avocados with scars, scabs or not well trimmed, and zero (0) cases containing decayed avocados. (*Id.*) The USDA inspection found the overall firmness of both shipments to be "hard," not "poor near spoiled condition." (*Id.*) Additionally, it is undisputed that the USDA inspection certificates indicates that Defendant, through their brokerage agent G. Mendez & Company, Inc., took possession of and was responsible for the shipments through the USDA inspection process. Thus, pursuant to the USDA inspection record, the USDA did not find the avocados in either shipment to be in poor or

near spoiled condition at the time Defendant took possession of the shipments. Contrary to Defendant's conclusory statement, the USDA market price for the first shipment—the shipment Defendant claims was near spoiled—was not $16 per case because the USDA did not find the avocados were in poor near spoiled condition.

Defendant offered no evidence, such as invoices reflecting sales below the agreed upon price, photographs showing the avocados' poor condition, or even communications between the Parties regarding poor condition and reduced value. The court is left only with the USDA inspection certificate indicating the condition of the avocados at the time Defendant took possession of the avocados, which supports Plaintiff's claim. In the face of this uncontested evidence, Defendant submits the conclusory statement by Dale Paul Jones that the USDA market price for the first shipment was only $16 per case and attached an unauthenticated screenshot of text messages without any explanation as to their relevance to the issues presented in the summary judgment motion. Additionally, in an e-mail dated March 13, 2019, Jones indicated that Defendant had completed $45,624.00 in sales with the last sale concluding on February 12, 2019, and admitted "payment is due next week as agreed to PACA terms." (Doc. 40-1 at 22.)

Viewing the evidence and all reasonable inferences therefrom in the light most favorable to the Defendant, the Court finds that the pleadings and supporting evidence are insufficient to create a genuine issue of material fact and defeat summary judgment. Therefore, the Court finds that summary judgment on Plaintiff's PACA claim (Count One) is due to be granted in favor of Plaintiff.

**Count Two – Breach of Contract**

The breach of contract claim is governed by Arizona law, under which a plaintiff must establish the existence of a contract, breach of that contract, and resulting damages. *Chartone, Inc. v. Bernini*, 207 Ariz. 162, 170, 83 P.3d 1103, 1111 (Ct. App. 2004) (citing *Thunderbird Metallurgical, Inc. v. Arizona Testing Lab'ys*, 5 Ariz. App. 48, 50, 423 P.2d 124, 126 (1967)). As Plaintiff correctly asserts, PACA "shall not in any way abridge or alter the remedies now existing at common law or by statute, and the provisions of this

chapter are in addition to such remedies," thus, Plaintiff is not precluded from bringing a breach of contract claim in addition to its PACA claim. 7 U.S.C.A. § 499e; *see Jacobs Silver K Farms, Inc. v. Taylor Produce, LLC*, 101 F. Supp. 3d 962, 971 (D. Idaho 2015) ("the broad remedial statement in 7 U.S.C. § 499e(b) and the policy behind the statute support the finding that the rights and remedies available at common law are preserved under PACA.").

In its response, Defendant did not respond to Plaintiff's motion for summary judgment on the breach of contract claim. (*See* Doc. 41.)  Here, Plaintiff asserts, and Defendant concedes, that the Parties entered into a seller/dealer contract in which Defendant would sell 3,840 cases of avocados on consignment on Plaintiff's behalf. (Doc. 39 at 2–3.)  The parties agreed on a valuation of $26 per case or $2.30 per kilogram of avocadoes and that Plaintiff would reimburse Defendant for any incurred expenses and brokerage fees. *Id.*  The parties further agreed that the contract would be performed pursuant to PACA terms which requires "'full payment promptly' which, 'for produce received on consignment' is defined as 'within 10 days after the date of final sale with respect to each shipment, or within 20 days from the date the goods are accepted at destination, whichever comes first.'" *Id.* at 3 (quoting 7 C.F.R. § 46.2(aa)).  Thus, a valid contract exists that governs the transaction at issue.

Plaintiff further argues that Defendant breached the contract because Plaintiff made two shipments which were deemed to be "delivered, in good condition, with *de minimis* spoilage" according to the USDA inspection certificates, and that, to date, Defendant has failed to pay Plaintiff under the terms of the contract. (Doc. 39 at 3.)  Defendant concedes that it has failed to pay plaintiff for any portion of the avocados sold, including the amount they admit Plaintiff is due.  As discussed, *supra*, Defendant has failed to rebut the evidence of record sufficiently to create a genuine issue of material fact.  Accordingly, the Court finds that Defendant was in breach of the contract when it failure to issue payment for the sold avocados as stipulated in the contract.

Finally, Plaintiff asserts that it suffered contract damages in the amount of $64,372.75 due to Defendant's breach. (Doc. 39 at 8) (citing *All Am. Sch. Supply Co. v. Slavens*, 125 Ariz. 231, 233, 609 P.2d 46 (1980) ("Arizona has long held that damages for breach of contract are those damages which arise naturally from the breach itself or which may be reasonably be supposed to have been within the contemplation of the parties at the time they entered the contract."); *Moore v. First Transit Bus Co.*, No. CV-20-00790-PHX-JJT, 2020 WL 9347648, at *2 (D. Ariz. Sept. 23, 2020) ("Referred to as 'expectation damages,' contract damages are most often based on the party's expected value of the contract that was unfulfilled due to the other party's nonperformance."). Accordingly, Plaintiff requests the Court grant Plaintiff summary judgment and "award damages in that amount, plus pre- and post-judgment interest and attorneys' fees and costs."[5] (Doc. 39 at 8.) Defendant concedes that Plaintiff is due damages for both shipments, they simply dispute the amount owed to Plaintiff. The Court found this argument unavailing for the reasons set forth above. Therefore, the Court finds that Plaintiff has resulting damages due to Defendant's breach.

**Counterclaim**

In its Answer, Defendant asserts the following counter claim:

1. Defendant entered into, and performed contractual obligations in a good faith/fair dealing manner. Plaintiff failed to enter into, and perform contractual obligations in a good faith/fair dealing manner.
2. Implied in every contract is a covenant of good faith/fair dealing. Plaintiff failed to contract in good faith/fair dealing.
3. As a direct and proximate result of Plaintiff's acts/omissions Defendant suffers damages of no less than $10,000.

(Doc. 15 at 2.) Plaintiff moves for summary judgment on Defendant's counterclaim. (Doc. 39 at 8–10.) "In Arizona, a covenant of good faith and fair dealing is implied in every

---

[5] Plaintiff indicates that it intends to file a separate motion for attorneys' fees; therefore, the Court will not rule on any requests for attorneys' fees contained within the motion for summary judgment to allow Plaintiff to brief the issue fully and provide Defendant an opportunity to be heard on the issue.

- 10 -

contract." *Maleki v. Desert Palms Pro. Properties, L.L.C.*, 222 Ariz. 327, 214 P.3d 415, 421 (Ct. App. 2009) (citing *Bike Fashion Corp. v. Kramer*, 202 Ariz. 420, 423, 46 P.3d 431, 434 (Ct. App. 2002)). The covenant of good faith and fair dealing is implied so that:

> "[. . .] 'neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship.'" *Id.* (quoting *Rawlings v. Apodaca*, 151 Ariz. 149, 153, 726 P.2d 565, 569 (1986)). "The duty arises by operation of law but exists by virtue of a contractual relationship." *Wells Fargo Bank v. Ariz. Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 490, 38 P.3d 12, 28 (2002) (citing *Rawlings*, 151 Ariz. at 153–54). "A party may breach the implied covenant even in the absence of a breach of an express provision of the contract by denying the other party the reasonably expected benefits of the agreement." *Nolan v. Starlight Pines Homeowners Ass'n*, 216 Ariz. 482, 489, 167 P.3d 1277, 1287 (Ct. App. 2007) (citing *Wells Fargo Bank*, 201 Ariz. at 491–92, 38 P.3d at 29–30).

*BMW of N. Am., LLC v. Mini Works, LLC*, 166 F. Supp. 3d 976, 985 (D. Ariz. 2010).

As Plaintiff asserts, Defendant failed to "produce *any* evidence regarding its counterclaim," and likewise provided no argument in its response to summary judgment. (Doc. 39 at 9) (emphasis in original). The Court finds nothing in the record to indicate that Plaintiff denied Defendant any reasonably expected benefit of the contract. The record shows that Plaintiff delivered two shipments of avocados to Defendant on consignment as per the terms of the contract. Additionally, the record indicates that during the contractual relationship Plaintiff made approximately seven direct deposits and payments to Defendant's account for expenses and brokerage fees, totaling $8,166.00, as required pursuant to the contract. (Doc. 40-1 at 14–20.) On March 13, 2019, Defendant sent Plaintiff an e-mail providing the gross avocado sales amount and attached invoices for all expenses and broker fees totaling $19,643.52, of which Plaintiff had already paid $8,166.00 and Plaintiff has deducted the remainder of the balance from their requested damages. (Doc.

40-1 at 22–48.) Defendant has failed to show, and the record does not reflect, that Defendant was denied any reasonably expected benefit of the contract or suffered any damages as a result. Accordingly, summary judgment on Defendant's counterclaim for breach of the implied covenant of good faith and fair dealing is due to be granted in favor of the Plaintiff.

**Requested Relief**

1. Damages

"If any commission merchant, dealer, or broker violates any provision of section 499b of this title he shall be liable to the person or persons injured thereby for the full amount of damages [. . .] sustained in consequence of such violation." 7 U.S.C. § 499e(a). Plaintiff requests damages in the amount of $64,372.85.[6] The Court finds Plaintiff's request for $64,372.85 warranted, as this amount corresponds with the amounts owed on the invoices and the undisputed agreed upon rate under the contract. Thus, the Court AWARDS Plaintiff $64,372.85.

2. Pre-Judgment Interest

Next, in addition to the principal amount of damages, Plaintiff requests pre-judgment interest. Absent a contractual right for an award of pre-judgment interest under PACA, as is the case here, "courts have uniformly agreed that a district court has broad discretion to award prejudgment interest to PACA claimants under 7 U.S.C. § 499e(c)(2)." *Middle Mountain Land & Produce Inc. v. Sound Commodities Inc.*, 307 F.3d 1220, 1225–26 (9th Cir. 2002) (citations omitted). "[A] district court may award reasonable prejudgment interest to PACA claimants if such an award is necessary to protect the interests of PACA claimants, and that such an award absent contract is discretionary." *Id.* at 1226; *see also W. Veg-Produce, Inc. v. Lexy Grp.*, No. 218CV00180ODWAGRX, 2018 WL 1804689, at *7–8 (C.D. Cal. Apr. 16, 2018) (citations omitted) ("[P]rejudgment interest may be included in a PACA trust claim if supported by a contractual right;

---

[6] Plaintiff indicated the total damages to be $64,372.75; however, the Court's independent calculation of damages reveals Plaintiff's calculation to be off by ten cents.

alternatively, the Court has discretion to award reasonable prejudgment interest if such an award promotes the interests of PACA claimants.").

The Ninth Circuit has held that "the interest rate prescribed for post-judgment interest under 28 U.S.C. § 1961 is appropriate for fixing the rate of prejudgment interest unless the trial judge finds, on substantial evidence, that the equities of that particular case require a different rate." *C.H. Robinson Co. v. Marina Produce Co.*, No. C 05-04032 WHA, 2006 WL 1144188, at *1 (N.D. Cal. Apr. 28, 2006) (quoting *Nelson v. EG & G Energy Measurements Group, Inc.*, 37 F.3d 1384, 1391 (9th Cir. 1994) (internal citation and quotations omitted)); *see also Blanton v. Anzalone*, 760 F.2d 989, 992-93 (9th Cir. 1985) ("Although section 1961 does not speak to prejudgment interest, [. . .] the same rate should be applied to prejudgment interest 'unless the trial judge finds, on substantial evidence, that the equities of the particular case require a different rate.'") (citations omitted). The Ninth Circuit further explained that "prejudgment interest is intended to cover the lost investment potential of funds to which the plaintiff was entitled, from the time of entitlement to the date of judgment." *C.H. Robinson Co.*, 2006 WL 1144188, at *1.

Plaintiff does not claim a contractual right to pre-judgment interest or make an argument for a specific interest rate. Thus, Plaintiff has failed to show "substantial evidence, that the equities of [this] particular case" require a different rate from that prescribed by 28 U.S.C. § 1961. *Id.* Section 1961 provides that:

> (a) Interest shall be allowed on any money judgment in a civil case recovered in a district court. Execution therefor may be levied by the marshal, in any case where, by the law of the State in which such court is held, execution may be levied for interest on judgments recovered in the courts of the State. Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding. [FN1] the date of the judgment. The Director

> of the Administrative Office of the United States Courts shall distribute notice of that rate and any changes in it to all Federal judges.
>
> (b) Interest shall be computed daily to the date of payment except as provided in section 2516(b) of this title and section 1304(b) of title 31, and shall be compounded annually.

28 U.S.C.A. § 1961(a)–(b). The current interest rate for federal judgments is 0.37 percent, effective January 3, 2022, through January 9, 2022. *Post Judgment Interest Rates*, https://www.azd.uscourts.gov/efiling/post-judgment-interest-rates (last visited Januray 4, 2022). Plaintiff has presented no argument or evidence to support a variance from the rate that applies pursuant to 28 U.S.C. § 1961.

The Court finds that to protect the interests of Plaintiff as a PACA claimant, Plaintiff is reasonably entitled to pre-judgment interest rate at a rate of 0.37 percent. However, first, the Court must determine Plaintiff's time of entitlement. On March 13, 2019, Defendant conceded that payment was due "next week as agreed to PACA terms." (Doc. 40-1 at 22.). Defendant has also conceded that, to date, it has failed to make any payment, including on the amount it does not dispute, and that it has failed to hold the funds in trust. Therefore, the Court finds that Plaintiff became entitled to payment by March 25, 2019. Accordingly, the Court awards Plaintiff pre-judgment interest of $661.60 beginning March 25, 2019, and continuing until judgment is entered at the daily rate of $0.65.[7]

    3.    Post-Judgment Interest

Finally, Plaintiff also seeks post-judgment interest from the date of judgment at the rate allowed by 28 U.S.C. § 1961. (Doc. 39 at 6–7) (citing *Andrews v. Triple R Distributing LLC*, 2013 WL 1177700 (D. Ariz. 2013) (post-judgment award of PACA claim made pursuant to 28 U.S.C. § 1961)). Similar to its pre-judgment interest request, Plaintiff does

---

[7] 0.37 percent of $64,372.85 is $238.17. Because pre-judgment interest accrues annually, Plaintiff is entitled to $476.35 for the interest accrued from March 25, 2019, to March 25, 2021. Pre-judgment interest accrues at approximately $0.65 per day. Therefore, Plaintiff is entitled to $185.25 for the pre-judgment interest accrued from March 26, 2021 to January 4, 2022. In sum, Plaintiff is entitled to $661.60 in pre-judgment interest.

not assert a contractual right to post-judgment interest. Therefore, "Plaintiff is statutorily entitled to post-judgment interest which accrues on all unpaid federal judgments and is governed by federal law." *Fam. Tree Produce, Inc. v. Bautista*, No. SA CV 13-00364-DOC, 2013 WL 6733576, at *7 (C.D. Cal. Dec. 13, 2013); *see also Progressive Produce Corp. v. Wild W. Produce, LLC*, No. CV 13-00665 RSWL, 2013 WL 1935921, at *2 (C.D. Cal. May 9, 2013) ("[p]ost-judgment interest is generally governed by 28 U.S.C. § 1961, which mandates the awarding of post-judgment interest according to the federal rate."). As previously discussed, "[s]uch interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1–year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding." 28 U.S.C. § 1961.

The Court finds this request appropriate. The current post-judgment interest rate is 0.37 percent, effective January 3, 2022, through January 9, 2022. *Post Judgment Interest Rates*, https://www.azd.uscourts.gov/efiling/post-judgment-interest-rates (last visited January 4, 2022). Accordingly, the Court finds Plaintiff is entitled to post-judgment interest, which shall accrue at the rate of 0.37 percent from the date of this Order and separately entered judgment, until paid in full.

### 4. Attorneys' Fees

Finally, Plaintiff also requests an award of attorneys' fees; however, Plaintiff has indicated that they intend to submit a separate motion to brief the issue in full. Therefore, Plaintiff shall file an appropriate motion with supporting documentation within fourteen (14) days from the entry of this memorandum opinion and order pursuant to the LRCiv 54.2.

## CONCLUSION

Based on the foregoing discussion and analysis, it is hereby ORDERED as follows:

(1) *Plaintiff's Motion for Summary Judgment* (Doc. 39) is GRANTED in favor of Plaintiff Salas Avocado S.P.S. de R.L. and against Defendant SA&E Enterprises LLC;

(2) Plaintiff's request for Principal in the amount of $64,372.85 is GRANTED;

(3) Plaintiff's request for pre-judgment interest in the amount of $661.60, as described above, is GRANTED;

(4) Plaintiff's request for post-judgment interests is GRANTED. Post–Judgment interest shall be at the at the current post-judgment rate per annum pursuant to 28 U.S.C. § 1961 from the date of the entry of this Judgment until paid in full to Plaintiff Salas Avocado S.P.R. de R.L.;

(5) Plaintiff may move for attorney's fees as provided in the Local Rules of Civil Procedure; and

(6) The Clerk of Court is DIRECTED enter a separate judgment that is consistent with this memorandum opinion and order pursuant to Fed. R. Civ. P. 58(a) and terminate this action.

Dated this 4th day of January, 2022.

Honorable D. Thomas Ferraro
United States Magistrate Judge